## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES MCLAINE** | : |
| | : |
| **Plaintiff,** | : |
| **v.** | : **3:13-CV-1378** |
| | : **(JUDGE MARIANI)** |
| **LACKAWANNA COUNTY, et al.** | : |
| | : |
| **Defendants.** | : |

## MEMORANDUM OPINION

### I.  Procedural History

On May 20, 2013, Plaintiff, James McLaine, filed a Complaint in the above-captioned

matter (Doc. 1), and subsequently filed an Amended Complaint on August 12, 2013,

alleging two violations of Plaintiff's rights under 42 U.S.C. § 1983.  (First Am. Complaint,

Doc. 12).  Defendants, Lackawanna County, Corey O'Brien, and Jim Wansacz, moved to

dismiss the Amended Complaint.  (Defs.' Motion to Dismiss, Doc. 15).  The parties have

fully briefed the motion, and it is ripe for decision.  For the reasons set forth below, the Court

will deny Defendant's motion.

### II. Factual Allegations

Plaintiff's Complaint alleges the following facts.

In 2008, McLaine was appointed as Deputy Director of Purchasing for Lackawanna

County.  (Doc. 12, ¶ 11).  At this time, Mike Washo, A.J. Munchak, and Corey O'Brien were

the Lackawanna County Commissioners.  (Id.).  In 2011, Patrick O'Malley and Jim Wansacz

were elected, replacing Washo and Munchak. (*Id*. at ¶ 12). After the election, "Wansacz and O'Brien announced that their hiring decisions for employment by Defendant Lackawanna County would be based upon political 'contacts and connections.'" (*Id*. at ¶ 13).

On January 19, 2012, Wansacz and O'Brien sent a letter to McLaine notifying him that he would need to apply for retention of his position as Deputy Director of Purchasing. (Doc. 12, ¶ 18). McLaine did so, and was notified by Wansacz and O'Brien on March 30, 2012, that he would not be retained and that his employment was terminated. (*Id*. at ¶¶ 19-20).

David Pettinato, "a political supporter of Defendants Wansacz and O'Brien", and brother-in-law of Mario Costa, "a long-time political affiliate of" Wansacz, was given McLaine's vacated position. (Doc. 12, ¶¶ 21-24). Between August, 2011 and September, 2012, Costa donated $1,750 to the political campaign of Wansacz and O'Brien, including $500 in September, 2012, after Pettinato replaced McLaine. (*Id*. at ¶¶ 25-28). Pettinato contributed $75 to the political campaign of Wansacz and O'Brien, prior to his appointment as Deputy Director of Purchasing, and another $250 after he replaced McLaine. (*Id*. at ¶¶ 29-30). McLaine also contributed money, including $325 to the Friends of Wansacz and O'Brien between September, 2011 and January, 2012. (*Id*. at ¶¶ 31-32).

Plaintiff alleges that he was "better qualified for the position of Deputy Director of Purchasing . . . than Mr. Pettinato" and was terminated "on account of [his] comparative lack

2

of political affiliation with" Wansacz and O'Brien and Pettinato's affiliation with these

Defendants. (Doc. 12, ¶¶ 38-39). Plaintiff is now suing Wansacz and O'Brien (Count I) and

Lackawanna County (Count II), under 42 U.S.C. § 1983, alleging that, in terminating

McLaine, Defendants violated Plaintiff's First Amendment right to forbear from politically

supporting candidates for public office (Doc. 12, ¶¶ 44-48).

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

3

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id*.

## IV. Analysis

To establish a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must demonstrate

that: (1) he was deprived of a federal right; and (2) the person who deprived him of that right

acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir.

2007). Section 1983 is not an independent source of substantive rights, but merely

"provides a remedy for deprivations of rights established elsewhere in the Constitution or

federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004). In evaluating a §

1983 claim, a Court must first "identify the exact contours of the underlying right said to

have been violated" and determine "whether the plaintiff has alleged a deprivation of a

constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (citing *Cnty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L. Ed. 1043 (1998)). As

applied in a case such as the one currently before this Court, the First Amendment right to

freedom of association, "plainly presupposes a freedom not to associate", and may be

"unconstitutionally infringe[d] upon" by certain Government actions. *Roberts v. U.S.*

*Jaycees*, 468 U.S. 609, 622–623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). *See also Bennis*

*v. Gable*, 823 F.2d 723, 732 (3d Cir. 1987) ("A citizen's right not to support a candidate is

every bit as protected as his right to support one.").

## A. Count I – Defendants O'Brien and Wansacz

Defendants first argue that O'Brien and Wansacz are entitled to qualified immunity,

and, as such, the Complaint must be dismissed. (Defs.' Brief in Supp. of Motion to Dismiss,

Doc. 16, at 5-7).

> Qualified immunity shields government officials from civil damages liability
> unless the official violated a statutory or constitutional right that was clearly
> established at the time of the challenged conduct. . . .  [C]ourts may grant
> qualified immunity on the ground that a purported right was not clearly
> established by prior case law, without resolving the often more difficult
> question whether the purported right exists at all. . . .  To be clearly
> established, a right must be sufficiently clear that every reasonable official
> would [have understood] that what he is doing violates that right. . . .  In other
> words, existing precedent must have placed the statutory or constitutional
> question beyond debate.  This "clearly established" standard protects the
> balance between vindication of constitutional rights and government officials'

effective performance of their duties by ensuring that officials can reasonably
... anticipate when their conduct may give rise to liability for damages.

*Reichle v. Howards*, --- U.S. ---, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal
citations omitted).

Given the requisite elements that must be met in order to establish qualified
immunity, Defendants contend that (1) "Plaintiff's associational right of non-affiliation was
not violated, because Plaintiff did in fact associate with Messrs. O'Brien and Wansacz by
making campaign contributions to their concerted political committee. . ." (Doc. 16, at 8);
and (2) "the constitutional prohibition of terminating a political supporter from public
employment cannot be said to be 'apparent' or 'beyond debate'" and is therefore not "clearly
established" (*Id.* at 10). We disagree with both contentions.

To determine whether Plaintiff has shown a *prima facie* case of political
discrimination, he must demonstrate that:

> (1) [he] was employed at a public agency in a position that does not require
> political affiliation, (2) [he] was engaged in constitutionally protected conduct,
> and (3) this conduct was a substantial or motivating factor in the government's
> employment decision.

*Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). Defendants'
argument that they are entitled to qualified immunity because McLaine associated with
O'Brien and Wansacz, and therefore Plaintiff's First Amendment right of association was not
violated, is premature. While we recognize that McLaine donated a combined total of $325
to the Friends of Wansacz and O'Brien, and Pettinato ultimately only donated the same

6

amount, (Doc. 12, ¶¶ 29-32), in light of Plaintiff's well-pleaded facts that, between August, 2011, and September, 2012, Costa, Pettinato's brother-in-law and a "long-time political affiliate" of Wansacz, donated $1,750 to the political campaign of Wansacz and O'Brien (*Id.* at ¶¶ 23-28), and that Pettinato "was a political supporter" of Wansacz and O'Brien (*Id.* at ¶ 22), Plaintiff has alleged sufficient facts to support a claim that he was both potentially engaged in constitutionally protected activity and that this conduct was a motivating factor in Defendants' determination to not retain him. Whether McLaine's donations to the Friends of Wansacz and O'Brien can be considered "*de minimus*" as Plaintiff contends (Doc. 12, ¶ 33), thereby precluding an argument that he was affiliated with Defendants, is a question of fact that cannot be determined at this time. Plaintiff's allegations may also be reasonably construed to recognize a cause of action that Plaintiff, who "did not have political 'contacts and connections' with Defendants Wansacz and O'Brien and was not politically affiliated with them," (Doc. 12, ¶ 15), gave the "*de minimus*" contributions to Defendants' golf tournament and inauguration (*Id.* at ¶ 33), not in support of their candidacy, but rather due to Defendants Wansacz and O'Brien's announcement that their hiring decisions would be based on political "contacts and connections" (*Id.* at ¶ 13). Further, even if McLaine did give money in support of the defendants, he may still have a cause of action where his continued retention depended on whether there was another person who was a larger and more connected supporter. All of these issues are appropriate matters for discovery and may not be resolved on a motion to dismiss.

7

Defendants' second argument is equally unconvincing.  They are correct that

*Anderson* recognizes that "this 'clearly established' inquiry must be undertaken in light of the

specific context of the case, not a broad general position." (Doc. 16, at 10, citing *Anderson*

*v. Creighton*, 483 U.S. 635, 639-640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  However,

Defendants' statement that they are entitled to qualified immunity because "the

constitutional prohibition of terminating a political supporter from public employment cannot

be said to be 'apparent' or 'beyond debate'" (Doc. 16, at 10), ignores the Supreme Court's

assertion that while

> the contours of the right must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right [, t]his is not to say
> that an official action is protected by qualified immunity unless the very action
> in question has previously been held unlawful, . . . but it is to say that in the
> light of pre-existing law the unlawfulness must be apparent.

*Anderson,* 483 U.S.at 640.  Further, Defendants concede the correctness of Plaintiff's

statement, which relies on Supreme Court and Third Circuit cases dating back to 1976, that

"it is a clearly established right that [an] employee cannot be terminated based on affiliation

or lack thereof." (Pl.'s Brief in Opp. to Defs. Motion to Dismiss; Doc. 18, at 12; Defs.' Reply

Brief, Doc. 19, at 7).  However, Defendants argue that this is simply "a correct general

statement of the law [but] provides no guidance in the resolution of this matter." (Doc. 19, at

7).  This argument, in conjunction with Defendants' supporting statement, that "Messrs.

O'Brien and Wansacz's research reveals no factually similar precedent supporting such a

proposition [that the constitutional prohibition of terminating a political supporter from public

employment is clearly established]," is insufficient to establish that the pre-existing law has not made the unlawfulness of Defendants' conduct "apparent".

Consequently, Defendants' motion to dismiss Count I on the grounds of Qualified Immunity is denied.

### B. Count II – Defendant Lackawanna County

Section 1983 liability may not be imposed solely on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

Defendants' motion to dismiss Count II – a § 1983 claim against Lackawanna County brought pursuant to *Monell* – is even more easily denied than Count I.  Defendants only ask the Court to dismiss this Count in a footnote, explaining that "[a] municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury. . . . Accordingly, because there has been no constitutional violation Plaintiff's First Amendment freedom of association claim fails as against the County." (Doc. 16, at 9 n.4).  Defendants re-iterate this argument verbatim in their Reply brief, without any

9

additional support or elaboration. (*See generally*, Doc. 29). Given that the Court has found that Plaintiff sufficiently pleaded facts to survive a motion to dismiss Count I, and therefore his First Amendment claim, we cannot dismiss Count II on the grounds suggested by Defendants.

Additionally, viewing the alleged facts in the light most favorable to the McLaine, Plaintiff has alleged sufficient facts to show the presence of a policy, rule, regulation, or custom so that liability under *Monell* would follow. Specifically, Plaintiff contends that upon Wansacz and O'Brien's election, they "announced that their hiring decisions for employment by Defendant Lackawanna County would be based upon political 'contacts and connections.'" (Doc. 12, ¶ 13). While this claim lacks any specific factual support, Plaintiff has nonetheless "nudged [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, to warrant a denial of Defendants' motion to dismiss Count II.

## V. Conclusion

For the foregoing reasons, the court will deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 15). A separate Order follows.

Robert D. Mariani
United States District Judge

10